# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

JOE GENE SANDERS,          )
                                          )

            Petitioner,       )
                                          )

vs.                              )       Case No. 10-CV-567-TCK-TLW
                                          )

DAVID MILLER, Warden,        )
                                          )

            Respondent.     )

## OPINION AND ORDER

Before the Court is the petition for writ of habeas corpus (Dkt. # 1) filed by Petitioner Joe Gene Sanders, a state inmate appearing pro se. Respondent filed a response (Dkt. # 13) and provided the state court records (Dkt. ## 13, 14, and 15) necessary for adjudication of Petitioner's claims. Petitioner filed a reply (Dkt. # 17). For the reasons discussed below, the petition for writ of habeas corpus shall be denied.

## *BACKGROUND*

On May 19, 2006, two Hispanic men, cousins Javier and Jesus Carranza, went to Show Place, a "gentlemen's club," located in Tulsa, Oklahoma. While at the club, the two men arranged to meet one of the dancers, Brandi Lindsey, a/k/a Dallas, after the club closed for the purpose of having sex. Lindsey called her boyfriend, Petitioner Joe Gene Sanders, and told him about the two men. Sanders and Lindsey devised a plan to rob the men. After the club closed at 2:00 a.m. on May 20, 2006, Javier and Jesus followed Lindsey and her friend and fellow club employee, Triston Fleetwood, to the apartment complex where Lindsey lived with Sanders. Lindsey was driving Fleetwood's car. The men got out of their vehicle and followed Lindsey and Fleetwood into the complex. As they began to round a corner, two black men, later identified as Sanders and Keynon

Owens, appeared.  Sanders said "give me your money." Javier and Jesus began to run.  Sanders, armed with a handgun, shot both men in the back.  Jesus went down and remained still.  Owens went through Jesus's pockets and took his wallet and keys.  Javier continued to resist. Sanders stood over Javier, and while shooting him at point blank range, said "I told you not to run." Sanders then took Javier's wallet and keys from his pockets.  Lindsey, Fleetwood, Sanders, and Owens all ran from the scene and went to Lindsey and Sanders' apartment.  Jesus survived.  Javier died at the scene.

The next day, Lindsey and Fleetwood, along with Sanders' sister, Tan, went to Sanders' home town, Redbird, Oklahoma. After dropping Tan off at the Sanders' family home, Lindsey, accompanied by Fleetwood, disposed of the handgun and burned the stolen wallets and Sanders' clothes, as directed by Sanders. They returned to Tulsa. Lindsey called 911 because she and Fleetwood knew the police had impounded Fleetwood's car after the shooting.  Police detectives arrived and took Lindsey and Fleetwood to the Detective Division where they were interviewed separately. Although the two women had agreed to lie and tell the police that two unknown black men appeared from nowhere and robbed Jesus and Javier, they eventually told police what happened and identified Sanders and Owens as the robbers.

Based on those events, Petitioner Joe Gene Sanders, and his co-defendants, Keynon Owens and Brandi Nicole Lindsey, were charged with multiple felonies in Tulsa County District Court, Case No. CF-2006-2341.[1] Petitioner was charged with First Degree Malice Murder, or in the

---

[1]Co-defendant Owens was charged with First Degree Felony Murder (Count II), Shooting With Intent to Kill (Count III), Robbery With a Dangerous Weapon (Count IV), and Robbery With a Dangerous Weapon (Count V).  At the conclusion of the trial, Owens was found guilty of Counts II and V, but was acquitted of Counts III and IV.  In accordance with the jury's recommendations, the trial judge sentenced Owens to life imprisonment on Count II and to ten (10) years imprisonment on Count V, to be served consecutively.  Owens appealed.  Based on the inconsistent verdicts returned by Owens' jury, the Oklahoma Court of Criminal Appeals reversed and remanded Owens'

alternative, First Degree Felony Murder (Count I), Shooting With Intent to Kill (Count III), Robbery

With a Dangerous Weapon (Counts IV and V). Javier Carranza was the victim in Counts I and IV.

Jesus Carranza was the victim in Counts III and V.  At the conclusion of his joint trial with Owens,

the jury found Sanders guilty of murder under both theories, and sentenced him to life without parole

on Count I.  In addition, the jury found Sanders guilty of Counts III, IV, and V and sentenced him

to ten (10) years imprisonment on Count III, and to twenty (20) years imprisonment on Counts IV

and V.  The trial judge sentenced Sanders in accordance with the jury's recommendation, and

ordered that Counts I and IV were to be served concurrently, and that Counts III and V were to be

served consecutively to each other and to Counts I and IV. At trial, Petitioner was represented by

attorney Elliot Z. Smith.

Petitioner appealed his convictions and sentences to the Oklahoma Court of Criminal

Appeals (OCCA).  On direct appeal, Petitioner was represented by attorney William H. Luker. He

raised eight (8) propositions of error, as follows:

Proposition 1:  Appellant was deprived of due process of law by being compelled to
participate in a joint trial with co-defendant Owens in which Appellant
suffered severe prejudice because of the joinder. As a result Appellant was
deprived of his rights as guaranteed by the Fifth, Eighth, and Fourteenth
Amendments of the United States Constitution and Article II, §§ 7 and 9 of
the Oklahoma Constitution.

Proposition 2:  Appellant was deprived of due process of law owing to the court's failure to
accord him nine peremptory challenges separate from those of the co-
defendant even though their defenses were inconsistent. The court's ruling

---

felony murder conviction. At the conclusion of a second trial, Owens was again convicted of felony
murder and sentenced to life imprisonment.  Co-defendant Lindsey was charged along with Owens
in Count II, and with Petitioner and Owens in Counts IV and V.  Prior to trial, Lindsey pled guilty
to Accessory After the Fact to First Degree Murder and was sentenced to ten (10) years
imprisonment, with two (2) years suspended. She testified for the State at the joint trial of Petitioner
and Owens.

3

was in violation of Oklahoma statute, the Eighth and Fourteenth
Amendments of the United States Constitution, and Article II, §§ 7 and 9 of
the Oklahoma Constitution.

Proposition 3:   Reversible error was committed when Detective Jeffery Felton recited Jesus
Carranza's out-of-court statements identifying Appellant as the person who
shot him and Javier Carranza. This error violated Appellant's rights under the
Sixth, Eighth, and Fourteenth Amendment of the United States Constitution
and Article II, § 7 of the Oklahoma Constitution.

Proposition 4:   The trial court committed reversible error by failing to instruct the jury that
the testimony of an informer should be examined and weighed with greater
care than that of an ordinary witness. By failing to give this instruction
regarding the testimony of Brandi Lindsey and Triston Fleetwood, the court
violated Appellant's rights under the Fifth, Sixth, and Fourteenth
Amendments of the United States Constitution and Article II, §§ 7 and 20 of
the Oklahoma Constitution.

Proposition 5:   The improper tactics and arguments of the prosecutor deprived Appellant of
a fair trial in violation of the Eighth and Fourteenth Amendments of the
Untied States Constitution and Article II, §§ 7 and 9 of the Oklahoma
Constitution.
    A.    The prosecutor commented on Appellant's right to silence.
    B.    The prosecutor argued facts not in evidence.
    C.    The prosecutor engaged in unnecessary ridicule of Appellant.
    D.    Conclusion.

Proposition 6:   The trial court committed reversible error by communicating with the jury
after it had begun its deliberations without bringing the jury back into court
in the presence of the prosecutor and the defense. This error denied Appellant
his Sixth Amendment right to counsel and his Fourteenth Amendment right
to due process of law, and also violated Article II, §§ 7 and 20 of the
Oklahoma Constitution.

Proposition 7:   Appellant received ineffective assistance of counsel, in violation of the Sixth,
Eighth, and Fourteenth Amendments of the United States Constitution and
Article II, §§ 7, 9, and 20 of the Oklahoma Constitution.
    A.    Trial counsel failed to preserve the record for appellate review by
failing to make contemporaneous objects to many trial errors.
    B.    Appellant received ineffective assistance of counsel for failure to
adequately investigate and present additional evidence of innocence.

4

> Proposition 8:  The accumulation of error in this case deprived Appellant of due process of law and necessitates reversal pursuant to the Fourteenth Amendment to the United States constitution and Article II, § 7 of the Oklahoma Constitution.

(Dkt. # 13, Ex. 1).  On May 12, 2009, in Case No. F-2007-1103, the OCCA affirmed Petitioner's

Judgment and Sentence and denied his request for an evidentiary hearing. See Dkt. # 13, Ex. 5.

On November 20, 2009, Petitioner filed an application for post-conviction relief. See Dkt.

# 13, Ex. 8.  Appearing pro se, he raised the following proposition of error:

> I was denied a fair trial and equal protection of the laws, where trial judge compelled counsel to represent me in a joint trial under conflicting interest.

Id.  By order filed January 13, 2010, the state district court denied the requested relief. See Dkt. #

13, Ex. 10.  Petitioner did not perfect a post-conviction appeal to the OCCA.

Petitioner commenced the instant habeas corpus action by filing his petition on September

3, 2010.  See Dkt. # 1.  In his petition, he identifies the following grounds of error:

> Ground 1:    Appellant was deprived of due process by [being] compelled to participate in a joint trial with co-defendant Owens.
>
> Ground 2:    Petitioner was denied due process due to trial court's failure [to] accord him nine separate peremptory challenges.
>
> Ground 3:    Reversible error was committed when detective/witness recited victim's out-of-court identification.
>
> Ground 4:    Trial court failed to instruct the jury that testimony of an informant should be weighed and examined with greater care than that of an ordinary witness.

(Dkt. # 1).  In response to the petition, see Dkt. # 13, Respondent argues that Petitioner is not

entitled to habeas corpus relief under 28 U.S.C. § 2254(d) as to ground 3, and that grounds 1, 2, and

4, raise issues of state law and, for that reason, are not cognizable in this habeas corpus action. Id.

*ANALYSIS*

**A.  Exhaustion/Evidentiary hearing**

As an initial matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b). See Rose v. Lundy, 455 U.S. 509, 510 (1982).  Petitioner presented his claims to the OCCA on direct appeal. Therefore, he has exhausted state court remedies.

In addition, the Court finds that an evidentiary hearing is not warranted as Petitioner has not met his burden of proving entitlement to an evidentiary hearing.  See Williams v. Taylor, 529 U.S. 420 (2000); Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998).

**B.  Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).

To the extent Petitioner's claims are cognizable in this federal habeas corpus proceeding, his claims shall be reviewed pursuant to 28 U.S.C. § 2254(d).

### 1.      Failure to sever (ground 1)

As his first proposition of error, Petitioner alleges that he was deprived of due process by being compelled to participate in a joint trial with his co-defendant, Keynon Owens.  See Dkt. # 1. On direct appeal, Petitioner argued that although both he and Owens denied their guilt, their defenses were factually different. See Dkt. # 13, Ex. 1 at 14-20.  As a result, Petitioner contended that the trial court erred in failing to sever the trial. Id. After summarizing the facts relevant to this claim, the OCCA addressed the merits and found as follows:

> [T]he defenses of Sanders and Owens were not mutually antagonistic. The defense of Sanders was to offer an alibi under which both men were innocent. And Sanders made no attempt to inculpate Owens. Although Owens' first line of defense was that he and Sanders were both innocent, his two-part second line of defense was to suggest that even if Sanders was involved, 1) Owens was totally innocent, since Milliken saw only one man in the parking lot and that man was not Owens, or 2) Owens was much less culpable than Sanders. Although there is some conflict between Sanders' defense and this second defense theory of Owens, this conflict does *not* qualify as mutually antagonistic. Sanders did not attempt to inculpate Owens, and Owens basically contrasted the evidence against him in relation to the stronger and more substantial evidence against Sanders. This was *not* a situation where each of the two co-defendants was "placed in the position of having to defend against two accusers, the State and his co-defendant." Hence the trial court did not abuse its discretion in refusing to order severance in this case.

(Dkt. # 13, Ex. 5 at 11 (emphases in original; quotation omitted)).

Generally, severance is a question of state law not cognizable in federal habeas proceedings. Fox v. Ward, 200 F.3d 1286, 1292 (10th Cir. 2000) (citing Cummings v. Evans, 161 F.3d 610, 619 (10th Cir.1998)). There is no constitutional right to severance without a strong showing of prejudice caused by the joint trial. See id. Severance is not constitutionally required merely because defense theories conflict or because one defendant is attempting to cast blame on another. Rather, a

7

petitioner must show "real prejudice." Id. at 1293. "Such actual prejudice is shown if the defenses are truly mutually exclusive, such that the jury could not believe the core of one defense without discounting entirely the core of the other." Id. (quotation omitted). "'Mutually antagonistic defenses are not prejudicial per se.'" Id. (quoting Zafiro v. United States, 506 U.S. 534, 538 (1993)).

After careful review of the record in this case, the Court finds that Petitioner has failed to demonstrate that he suffered prejudice as a result of being tried jointly with his co-defendant. As discussed above, Petitioner testified in his own behalf and asserted an "alibi" defense. Neither Sanders nor Owens made a statement inculpating the other. Cf. Bruton v. United States, 391 U.S. 123, 131 (1968) (holding that the admission in evidence of a co-defendant's confession inculpating the defendant at a joint trial at which the co-defendant does not testify violates the defendant's Sixth Amendment right to confront witnesses against him). In his reply to Respondent's response, see Dkt. # 17, Sanders complains that, on cross-examination, Owens' attorney elicited information from Lindsey and Jesus Carranza concerning Sanders' role as the shooter. However, the same information had already been elicited by the prosecutor during his direct examination. See Dkt. # 15-1, Tr. Trans. Vol. III at 471-72, 477, 602-03. While Owens' attorney sought to establish that the evidence against Sanders was stronger and more substantial than the evidence against Owens, the defenses of Sanders and Owens were not mutually antagonistic. Sanders has failed to demonstrate that he  was prejudiced by being tried jointly with his co-defendant Owens. The trial court's failure to grant a severance did not result in a fundamentally unfair trial. Therefore, Petitioner is not entitled to habeas relief on this ground of error.

## 2.      Denial of nine (9) separate peremptory challenges (ground 2)

As his second proposition of error, Petitioner claims that he was denied due process as a

result of the trial court's failure to allow him to assert nine (9) separate peremptory challenges.  On

direct appeal, the OCCA rejected this claim, finding as follows:

> Sanders argues that he and Owens should each have been given nine peremptory
> challenges, rather than having to share nine peremptory challenges, because their
> defenses were inconsistent. Oklahoma law does require that when co-defendants are
> tried together, they must be given separate peremptory challenges if they have
> "inconsistent defenses." Sanders admits that his counsel did not request separate
> peremptory challenges, nor did counsel object to not being given separate challenges.
> Sanders argues, however, that because this error is "structural," under *Golden v.
> State*, it is not subject to a harmless error analysis and prejudice need not be proven.
>       Sanders correctly argues that the threshold to establish that the defenses of
> two co-defendants were "inconsistent" (entitling the co-defendants to separate
> peremptory challenges) is different from and less demanding than the standard to
> establish that their defenses were "mutually antagonistic" (entitled the co-defendants
> to separate trials).  Nevertheless, the defenses of Sanders and Owens . . . were not
> inconsistent. This Court has recognized that where the difference in the defenses of
> co-defendants "is restricted to the level of each co-defendant's culpability, co-
> defendants may be required to share peremptory challenges." When Owens' counsel
> noted, in his final closing remarks, that even if the jury did not believe that Owens
> was innocent, Owens was much less culpable than Sanders, counsel was making an
> argument about the level of culpability. This kind of argument did not require
> separate peremptory challenges.
>       In addition, this Court has recognized that when co-defendants both attempt
> to exculpate themselves, without also trying to inculpate their co-defendant, separate
> peremptory challenges are not always required. In *Nickell v. State*, each of two co-
> defendants put on a defense that he was not the person with a third co-defendant
> (who pled guilty and testified for the State) when the crimes were committed,
> without suggesting that the *other* defendant was the one with the (admittedly guilty)
> third co-defendant. This Court found, in *Nickell*, that the defenses of these co-
> defendants were not inconsistent and consequently, that they were not entitled to
> separate peremptory challenges. To the extent that both Sanders and Owens
> maintained their innocence -- which was the main defense of both men -- their
> defenses were entirely consistent. To the extent that counsel for Owens emphasized
> that Milliken saw only one black man in the parking lot and that she was certain this
> man was not Owens, counsel was again attempting to exculpate Owens, without
> actually inculpating Sanders. Under *Nickell*, this second-tier defense approach did
> not result in inconsistent defenses; nor did it necessitate that Owens and Sanders be
> given separate peremptory challenges.  This claim is rejected accordingly. The trial

court did not err by failing, *sua sponte*, to provide Owens and Sanders with nine separate peremptory challenges apiece.

(Dkt. # 13, Ex. 5 at 11-14 (emphases in original; footnotes omitted)).

The Sixth Amendment, as applicable to the states through the Fourteenth Amendment, and principles of due process guarantee a criminal defendant in state court an "impartial jury." Ristaino v. Ross, 424 U.S. 589, 595 n.6 (1976) (citations omitted); Ross v. Oklahoma, 487 U.S. 81, 85 (1988). "[T]he Constitution presupposes that a jury selected from a fair cross section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case." Lockhart v. McCree, 476 U.S. 162, 184 (1986). In Ross v. Oklahoma, the Supreme Court specifically rejected the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury. Ross, 487 U.S. at 88. "[P]eremptory challenges are not of constitutional dimension. They are a means to achieve the end of an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." Id. (citations omitted). Thus, any claim that the jury was impartial must focus on the jurors who ultimately sat. Id. at 86.

In the petition, Petitioner never suggests that any of the 12 jurors was not impartial. Thus, he is objecting only to the number of peremptory challenges. This is a question of state law, not of constitutional dimension. See Fox, 200 F.3d at 1293; Cummings, 161 F.3d at 619 (citing Ross, 487 U.S. at 88). As a result, this claim is not cognizable on habeas corpus review. Cummings, 161 F.3d at 619. His request for habeas corpus relief on this claim shall be denied.

### 3.      Improper admission of out-of-court identification (ground 3)

As his third proposition of error, Petitioner claims that Tulsa Police Detective Jeff Felton was

allowed to testify improperly that, shortly after the shooting, Jesus Carranza, the surviving victim,

identified Sanders as the shooter by picking Sanders' picture out of a photo lineup. See Dkt. # 1. The

OCCA denied relief on this claim, summarizing Petitioner's claim and finding as follows:

> . . . Sanders challenges the testimony of lead investigator Jeff Felton that shortly after
> the robbery/homicide, Jesus Carranza picked Sanders' picture out of a photo lineup
> and identified him as the shooter. The testimony came out during the cross-
> examination of Carranza by counsel for Owens. Sanders argues that Felton's
> testimony amounted to impermissible third-party bolstering of Jesus Carranza's
> testimony identifying Sanders as the shooter and also improper hearsay.
>      The State acknowledges that the testimony by Felton was improper, since this
> Court has held that "only the identifier may testify that an identification was made."
> In other words, it is error to allow a third party to testify that an extrajudicial
> identification was made by a witness. This Court has held, however, that where such
> third-party testimony follows an in-court identification of the accused by the
> identifying witness, the error can be harmless. In the current case, where Jesus
> Carranza's prior, in-trial identification of Sanders as the shooter was supported by
> the testimony of both Lindsey and Felton – who were very familiar with both
> Sanders and Owens and who never wavered in identifying Sanders as the only
> shooter -- the error in admitting the third-party identification testimony be Felton was
> harmless. The jury was well aware at trial that Jesus Carranza was having trouble
> saying for sure which of the co-defendants was the shooter. Hence the jury likely
> relied much more on the testimony of Lindsey and Fleetwood in this regard, as well
> as that of independent eyewitness Milliken, who was certain that Owens was not the
> man she saw shooting the two Hispanic men. Any error in this regard was harmless
> beyond a reasonable doubt.

(Dkt. # 13, Ex. 5 at 14-15 (footnotes omitted)).

To the extent Petitioner is asserting a claim of improper admission of evidence under state

law, his claim is not cognizable in this federal habeas proceeding. See Smith v. Phillips, 455 U.S.

209, 221 (1982) ("Federal courts have no supervisory authority over state judicial proceedings and

may intervene only to correct wrongs of constitutional dimension."). When a habeas petitioner

challenges a state court's admission of evidence, "[t]he question presented in [the habeas

proceeding] is not whether th[e] evidence was admissible under state law, but instead whether considered in light of the entire record, its admission resulted in a fundamentally unfair trial." Knighton v. Mullin, 293 F.3d 1165, 1171 (10th Cir. 2002). Therefore, the Court must determine whether the admission of the out-of-court identification evidence, provided by Detective Felton, rendered Petitioner's trial fundamentally unfair.

In this case, the OCCA found that the admission of the out-of-court identification evidence was improper under state law, but that the error was harmless. Having carefully reviewed the record, this Court agrees. The appropriate harmless error standard to be applied on habeas review is from Brecht v. Abrahamson, 507 U.S. 619, 638 (1993).  See Herrera v. Lemaster, 301 F.3d 1192, 1199 (10th Cir. 2002). That standard "requires reversal only if [the error] had substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 631 (quotation omitted). "[E]rrors which do not contribute to the verdict should not be reversed unless their effect is fundamentally unfair." United States v. Turrietta, 696 F.3d 972, 984 (10th Cir. 2012) (citing Rose v. Clark, 478 U.S. 570, 579 (1986)). Thus, Petitioner's burden is to show that his trial was rendered fundamentally unfair by the improper admission of the identification evidence.  See Satcher v. Pruett, 126 F.3d 561, 567-68 (4th Cir. 1997) (applying Brecht inquiry to habeas petitioner's challenge to witnesses in-court identification and concluding that evidence did not have a substantial and injurious effect on the jury's verdict in light of the other identification evidence at trial); see also Kennaugh v. Miller, 289 F.3d 36, 48 (2d Cir. 2002).

Petitioner has failed to satisfy his burden. Prior to Detective Felton's challenged testimony regarding Carranza's out-of-court identification of Petitioner as the shooter, see Dkt. # 15-1, Tr. Trans. Vol. III at 667, Petitioner's jury heard the testimony of Lindsey and Fleetwood, both of whom

identified Petitioner as the shooter.  See id. at 471-77, 537. In addition, Jesus Carranza had already

offered his in-court identifications of Sanders as the man who robbed and shot his cousin, Javier,

and of Owens as the man who shot and robbed him, Jesus. See id. at 600-03. The jury also heard

Detective Felton testify that he traveled to Redbird, Oklahoma, and found burned, scorched ground

in a ditch in the area where Lindsey said she had been directed by Sanders to burn evidence from

the robberies. Id. at 654-55.  In light of the strength of that evidence against Sanders, the Court finds

that the improperly admitted testimony did not have a substantial and injurious effect on the jury's

verdicts. Thus, the OCCA's adjudication of this claim was not an unreasonable application of

Supreme Court law, nor was it based on an unreasonable determination of the facts. 28 U.S.C. §

2254(d).

Having failed to demonstrate that his trial was rendered fundamentally unfair by the trial

court's error, or that the OCCA's determination that the error was harmless was unreasonable,

Petitioner is not entitled to habeas corpus relief on his ground three proposition of error.

### 4.      Failure to instruct on informant testimony (ground 4)

As his fourth proposition of error, Petitioner complains that the trial court erred in failing to

instruct the jury that testimony of an informant should be weighed and examined with greater care

than that of an ordinary witness.  On direct appeal, the OCCA rejected this claim, finding as follows:

> . . . Sanders argues that his jury should have been given the uniform instructions
> relating to "informants," regarding the testimony of Lindsey and Fleetwood. Defense
> counsel did not request an informant instruction at trial, nor did counsel object to the
> failure to give any such instruction. Hence we review only for plain error.
>
> * * * * * *
>
> It is not inaccurate to describe Lindsey and Fleetwood as "informants," since
> there was evidence that they were both treated more leniently than they could have
> been treated based upon their willingness to testify for the State against Sanders and

13

Owens. Hence it would have been appropriate to instruct the jury with OUJI-CR (2d) 9-43, regarding the testimony of informants . . . .

* * * * * *

This Court finds that although it would have been appropriate to instruct the jury according to OUJI-CR (2d) 9-43, relating to informant testimony, it was not plain error to fail to do so, nor was Sanders in any way prejudiced by this omission. In particular, this Court notes that the key elements of the testimony of Lindsey and Fleetwood, *i.e.*, how the encounter at the Village East apartments was set up by Lindsey and how the robbery/murder was carried out by Sanders and Owens, was corroborated by the testimony of the victim, Jesus Carranza. Even without the additional instruction, Sanders' jury was made well aware of its responsibility to evaluate the credibility of Lindsey and Fleetwood, as well as all the factors suggesting that their testimony should be given particularly careful scrutiny. This claim is rejected accordingly.

(Dkt. # 13, Ex. 5 at 15-18).

"[I]t is not the province of a federal habeas court to reexamine state court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also Hooks v. Workman, 606 F.3d 715, 748 (10th Cir. 2010). In conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle, 502 U.S. at 67-68. Generally, matters concerning the giving of jury instructions are considered questions of state law and not proper subjects of federal habeas corpus review under 28 U.S.C. § 2254. Patton v. Mullin, 425 F.3d 788, 807 (10th Cir. 2005). "A state conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial." Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995).

The record for this case reflects that the state court's instructions to the jury regarding assessment of witness credibility, and specifically, the omission of an instruction regarding the testimony of informants, did not deprive Petitioner of fundamental fairness or violate due process.

14

See Henderson v. Kibbe, 431 U.S. 145, 155 (1977). As noted by the OCCA, an instruction on the credibility of informers, see OUJI-CR(2d) 9-43, could have been issued based on the testimony of Lindsey and Fleetwood.  Although an instruction on the credibility of informers was not given, Petitioner's jury was given numerous instructions with regard to assessing witness credibility, including instructions on inconsistent statements, see Dkt. # 13, Ex. 15, Instruction Nos. 15, 16, O.R. at 275-76; the existence of a prior conviction for Lindsey, id., Instruction No. 19, O.R. at 279; eyewitness credibility, id., Instruction No. 21, O.R. at 281; corroboration of accomplice testimony, id., Instruction Nos. 22-27, O.R. at 282-87; and weight and credibility of testimony, id., Instruction No. 31, O.R. at 291.  Upon review of the instructions as a whole, the Court finds Petitioner's trial was not rendered fundamentally unfair as a result of the trial court's failure to issue an instruction on informant credibility. The OCCA's decision was not an unreasonable application of Supreme Court law, or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).  Petitioner is not entitled to habeas corpus relief on ground four.

## C.  Certificate of appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."  A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

15

In addition, when the Court's ruling is based on procedural grounds, Petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA was debatable amongst jurists of reason. See Dockins v. Hines, 374 F.3d 935 (10th Cir. 2004). As to the claim denied as moot, Petitioner has failed to satisfy the second prong of the required showing, i.e., that the Court's ruling resulting in the denial of a claim on procedural grounds was debatable or incorrect. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## CONCLUSION

After carefully reviewing the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

**ACCORDINGLY, IT IS HEREBY ORDERED that** the petition for a writ of habeas corpus (Dkt. # 1) is **denied**. A separate judgment shall be entered in this matter. A certificate of appealability is **denied**.

**SO ORDERED** this 28th day of May, 2013.

TERENCE C. KERN
UNITED STATES DISTRICT JUDGE

16